**FILED**

**JUL 2 9 2016**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

ANHEUSER-BUSCH InBEV
SA/NV, and

SABMILLER plc,

        Defendants.

Civil Action No. 16 - 1483  (EGS)
Judge  Sullivan

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I.

### DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A.    "ABI" means Anheuser-Busch InBev SA/NV, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, successors in interest (including any successor in interest to Anheuser-Busch InBev SA/NV following the Completion of the Transaction) and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is majority (greater than 50%) or total ownership or control between the company and any other person.

B.      "Acquirer" means

    1.      Molson Coors; or

    2.      An alternative purchaser of the Divestiture Assets selected pursuant to the procedures set forth in the Final Judgment.

C.      "Beer" means any fermented alcoholic beverage that is (1) composed in part of water, a type of malted starch, yeast, and hops or other flavoring, and (2) has undergone the process of brewing.  As used herein, the term "Beer" shall also include flavored malt beverages, root beers, and ciders.

D.      "Closing" means consummation of the divestiture of the Divestiture Assets pursuant to the proposed Final Judgment.

E.      "Completion of the Transaction" means the completion of the Transaction in accordance with its terms.

F.      "Defendants" means ABI and SABMiller, and any successor or assignee to all or substantially all of the business or assets of ABI or SABMiller, involved in the brewing, development, production, servicing, distribution, marketing, or sale of Beer.

G.      "Divestiture Assets" means:

    1.      SABMiller's equity and ownership stake in MillerCoors;

    2.      All intellectual property of SABMiller (other than MillerCoors) that is primarily related to any Miller-Branded Product, both inside and outside the Territory, including, but not limited to: (i) patents (including all reissues, divisions, continuations, continuations-in-part, reexaminations, supplemental examinations, foreign counterparts, substitutions and extensions thereof) and patent applications; (ii) copyrights and all

applications, registrations, and renewals therefor; (iii) trademarks, trade names, service marks, service names, trade dress, and other indicia of origin and all applications, registrations, and renewals therefor; (iv) technical information, know-how, trade secrets, and other proprietary and confidential information, including such information relating to inventions, technology, product formulations, recipes, production processes, customer lists, and marketing databases; and (v) domain names, social media accounts, and identifiers and registrations therefor;

3. All contracts, commitments, agreements, subcontracts, leases, subleases, licenses, sublicenses, purchase orders, or other legally binding promises or obligations, whether written or oral, to which SABMiller (other than MillerCoors) is a party and that are primarily related to the manufacture, distribution, marketing, and sale of Miller-Branded Products outside of the Territory, in each case other than any real estate leases or employment or independent contractor agreements;

4. All raw material inventory exclusively related to the manufacture, distribution, marketing, and sale of Miller-Branded Products outside of the Territory;

5. All royalty or equivalent rights of SABMiller in respect of oil and gas deposits at the brewery operated by MillerCoors located at Fort Worth, Texas;

6.      All research and development activities primarily related to the
manufacture, distribution, marketing, and sale of Miller-Branded Products
outside of the Territory;

7.      All licenses, permits, and authorizations issued by any governmental
organization primarily related to the manufacture, distribution, marketing,
and sale of Miller-Branded Products outside of the Territory, but only to
the extent that such licenses, permits, and authorizations are capable of
assignment or transfer by SABMiller;

8.      All customer lists, contracts, accounts, and credit records primarily related
to the manufacture, distribution, marketing, and sale of Miller-Branded
Products outside of the Territory;

9.      All repair, performance, and other records primarily related to the
manufacture, distribution, marketing, and sale of Miller-Branded Products
outside of the Territory;

10.     All intangible assets including computer software and related
documentation, safety procedures for the handling of materials and
substances, design tools and simulation capability, and research data
concerning historic and current research and development efforts,
including, but not limited to, designs of experiments, and the results of
successful and unsuccessful designs and experiments, primarily related to
the manufacture, distribution, marketing, and sale of Miller-Branded
Products outside of the Territory;

11.    All drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, research data concerning historic and current research and development, quality assurance and control procedures manuals and technical information Defendants provide to their own employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments, primarily related to the manufacture, distribution, marketing, and sale of Miller-Branded Products outside of the Territory;

12.    All other assets primarily related to the manufacture, distribution, marketing, and sale of Miller-Branded Products outside of the Territory, including finished goods and work-in-progress, point-of-sale and advertising materials; and

13.    Perpetual, fully paid-up, royalty-free licenses, entered into only with the approval of the United States in its sole discretion, to any intellectual property and any other intangible assets required to permit the Acquirer to manufacture, import, distribute, market, or sell the Import Products and the Licensed Products in the Territory.

With respect to clauses (2) through (13) above, Divestiture Assets excludes (A) cash and cash equivalents, (B) any accounts receivable, (C) subject to the provisions of Section IV.E of the proposed Final Judgment, any employees or other personnel or benefit obligations with respect thereto, (D) any capital stock or other equity securities, (E) any

real property or interests therein (other than certain royalty and equivalent rights in respect of oil and gas deposits referenced in clause (5)), (F) any property, plant or equipment (or any portion thereof), and (G) any of the items enumerated in clauses (2) through (13) above that are owned or controlled by any third party and are therefore not capable of assignment or transfer by SABMiller.

H.      "Import Products" means Beer and any other beverages, excluding Miller-Branded Products and Licensed Products, imported, distributed, marketed, or sold in the Territory, under any of the brands or sub-brands set forth on Attachment A and any other sub-brands of such brands, and until the divestitures required by the proposed Final Judgment have been accomplished, the current existing licenses to any intellectual property and any other intangible assets required to permit MillerCoors to manufacture, import, distribute, market, or sell those brands and sub-brands in the Territory.

I.      "Licensed Products" means Beer and any other beverages manufactured, distributed, marketed or sold in the Territory under the Foster's or Redd's brands or any sub-brands of such brands.

J.      "Miller-Branded Products" means Beer and any other beverages manufactured, distributed, marketed, and sold, anywhere in the world, under any of the brands or sub-brands set forth on Attachment B and any other sub-brands of such brands.

K.      "Miller International Products" means Miller-Branded Products sold outside of the Territory and any intellectual property and any other intangible assets required to permit the Acquirer to manufacture, distribute, market, or sell the Miller-Branded Products.

L.      "MillerCoors" means MillerCoors LLC, its divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, employees, agents, and

representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any person in which there is majority (greater than 50%) or total ownership or control between the company and any other person. As used herein, the term "MillerCoors" shall not include SABMiller or Molson Coors.

M. "MillerCoors Products" means all Beers currently manufactured or imported by MillerCoors.

N. "Molson Coors" means Molson Coors Brewing Company, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is majority (greater than 50%) or total ownership or control between the company and any other person. As used herein, the term "Molson Coors" shall not include MillerCoors unless and until Molson Coors acquires the Divestiture Assets pursuant to Section IV or Section VI of the proposed Final Judgment.

O. "SABMiller" means SABMiller plc, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is majority (greater than 50%) or total ownership or control between the company and any other person. As used herein in connection with any obligation of SABMiller with respect to control of MillerCoors, the term SABMiller shall mean SABMiller's non-controlling 58% equity interest and 50% voting rights in MillerCoors, which are subject to the MillerCoors LLC Amended and

Restated Operating Agreement (the "MillerCoors Operating Agreement"), until Completion of the Transaction pursuant to Section IV or Section VI of the proposed Final Judgment.

P.     "Territory" means the fifty states of the United States of America, the District of Columbia, Puerto Rico, and all United States military bases located in the fifty states of the United States of America, the District of Columbia, and Puerto Rico.

Q.     "Transaction" means ABI's proposed acquisition of all of the shares of SABMiller pursuant to the Co-Operation Agreement between Anheuser-Busch Inbev SA/NV and SABMiller plc, the joint announcement by Anheuser-Busch Inbev SA/NV and SABMiller plc in relation to the Transaction pursuant to Rule 2.7 of the UK City Code on Takeovers and Mergers, and the letter agreement related to the Co-Operation Agreement between Anheuser-Busch Inbev SA/NV and SABMiller plc, each of which is dated November 11, 2015.

II.

## OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure ABI's prompt divestitures of the Divestiture Assets to Molson Coors, or to another Acquirer acceptable to the United States, in order to remedy the effects that the United States alleges would otherwise result from Defendant ABI's acquisition of Defendant SABMiller.

Under the proposed Final Judgment, Molson Coors would acquire from ABI SABMiller's equity and ownership stake in MillerCoors, SABMiller's world-wide rights to Miller-Branded Products, and perpetual, fully paid-up, royalty free licenses to any intellectual property and any other intangible assets owned by SABMiller required to permit the Acquirer to manufacture, import, distribute, market, or sell the Import Products and the Licensed Products in the Territory.

8

This Hold Separate Stipulation and Order ensures that the relief afforded in the proposed Final Judgment will be effective, by: (1) prior to the proposed divestitures, ensuring that the Divestiture Assets remain economically viable, ongoing business concerns; that MillerCoors will remain independent of Defendants and uninfluenced by Defendants as provided herein; and that competition is maintained during the pendency of the ordered divestitures; and by (2) ensuring that all Defendants will be bound by the terms of the proposed Final Judgment during the settlement approval process that will occur under the Antitrust Procedures and Penalties Act, 15 U.S.C. §§ 16(b)-(h) (the "APPA").

III.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of, and each of the parties to, this action, and venue of this action is proper in the United States District Court for the District of Columbia.

IV.

## COMPLIANCE WITH AND ENTRY OF PROPOSED FINAL JUDGMENT

A.      The parties stipulate that a proposed Final Judgment in the form filed simultaneously with this Hold Separate Stipulation and Order may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the APPA, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on Defendants and by filing that notice with the Court. Defendants agree to arrange, at their expense, publication as quickly as possible of the newspaper notice required by the APPA, which shall be drafted by the United States in its sole discretion. The publication shall be arranged no

later than three (3) business days after Defendants' receipt from the United States of the text of the notice and the identity of the newspaper within which the publication shall be made. Defendants shall promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged, and (2) the certification of the publication prepared by the newspaper within which the notice was published.

B.     Defendants shall abide by and comply with their respective obligations under the provisions of the proposed Final Judgment, pending the proposed Final Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Hold Separate Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment. The United States shall have the full rights and enforcement powers in the proposed Final Judgment from the date of the execution of this Hold Separate Stipulation and Order, including as though the same were in full force and effect as the final order of the Court.

C.     Defendants shall not consummate the Transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

D.     This Hold Separate Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.     In the event (1) the Transaction is not completed on or before May 11, 2017, or is otherwise abandoned by the Defendants in accordance with the terms of the Co-Operation Agreement between Anheuser-Busch Inbev SA/NV and SABMiller plc dated November 11, 2015, (2) the United States has withdrawn its consent, as provided in Section IV.A above, or (3) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order,

the time has expired for all appeals of any Court ruling declining entry of the proposed Final

Judgment, and the Court has not otherwise ordered continued compliance with the terms and

provisions of the proposed Final Judgment, then the parties are released from all further

obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate

Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F.       Defendants represent that the divestitures ordered in the proposed Final Judgment

can (subject to Completion of the Transaction) and will be made, and that Defendants will later

raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to

modify any of the provisions contained therein.

V.

## HOLD SEPARATE AND ASSET PRESERVATION OBLIGATIONS WITH RESPECT TO MILLERCOORS

Until the divestitures required by the proposed Final Judgment have been accomplished

or the Transaction is abandoned by the Defendants in accordance with the terms of the Co-

Operation Agreement between Anheuser-Busch Inbev SA/NV and SABMiller plc dated

November 11, 2015:

A.       SABMiller shall until Completion of the Transaction and ABI shall until Closing

take all steps that are within their respective power and consistent with the MillerCoors

Operating Agreement to ensure that (1) MillerCoors will be maintained and operated as an

independent, ongoing, economically viable and active competitor in the brewing, development,

production, servicing, distribution, marketing, or sale of Beer; (2) management, sales, and

operations of MillerCoors will not be influenced by SABMiller or ABI; and (3) the books,

records, competitively sensitive sales, marketing and pricing information, and decision-making

concerning production, distribution or sales of products by MillerCoors will be kept separate and

apart from Defendants' other operations, provided that SABMiller is able to receive and retain such information and documents from MillerCoors as may be required for SABMiller's legal, regulatory, or tax requirements and in accordance with the MillerCoors Operating Agreement.

B.      SABMiller shall until Completion of the Transaction and ABI shall until Closing use all reasonable efforts consistent with their respective obligations herein not to prevent or interfere with the achievement by the management of MillerCoors of the agreed upon business plan and budget for MillerCoors for calendar year 2016, except as may be otherwise agreed with MillerCoors.

C.      SABMiller shall until Completion of the Transaction and ABI shall until Closing ensure that their nominated managers and appointees to the MillerCoors Board of Directors will not prevent or interfere with the achievement by the management of MillerCoors of the agreed upon business plan and budget for MillerCoors for calendar year 2016, except as may be otherwise agreed with MillerCoors.

D.      ABI shall not influence or attempt to influence any operational or financial decision of MillerCoors.

E.      SABMiller shall until Completion of the Transaction and ABI shall until Closing take all steps that are within their respective power and consistent with the MillerCoors Operating Agreement to ensure that all tangible MillerCoors assets are fully maintained in operable condition (to the extent such assets were operational on the date the Complaint was filed) at no less than their current capacity and sales, and shall maintain and adhere to normal repair and maintenance schedules for such assets.  SABMiller shall until Completion of the Transaction and ABI shall until Closing take all steps that are within their respective power and

consistent with the MillerCoors Operating Agreement to preserve and maintain the value and goodwill of intangible MillerCoors assets.

  F.  SABMiller shall until Completion of the Transaction and ABI shall until Closing, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, not remove, sell, lease, assign, transfer, pledge or otherwise dispose of any assets of MillerCoors, other than the sale of Beer inventory or as previously approved by the MillerCoors Board.

  G.  SABMiller shall until Completion of the Transaction and ABI shall until Closing do nothing to prevent MillerCoors from maintaining, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income of MillerCoors.

  H.  SABMiller shall until Completion of the Transaction and ABI shall until Closing take no action that would jeopardize, delay, or impede the sale of their interest in MillerCoors.

  I.  Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the proposed Final Judgment to complete the divestiture of Defendants' interest in MillerCoors pursuant to the proposed Final Judgment to an Acquirer acceptable to the United States.

VI.

ASSET PRESERVATION AND MAINTENANCE OBLIGATIONS WITH RESPECT TO
IMPORT PRODUCTS AND MILLER INTERNATIONAL PRODUCTS

Until the divestitures required by the proposed Final Judgment have been accomplished:

  A.  SABMiller shall until Completion of the Transaction and ABI shall until Closing take all steps within their power to preserve and maintain the Import Products and Miller

13

International Products as economically viable assets and shall continue to manage and operate the Import Products and Miller International Products in accordance with past practice and shall do nothing that would impair, delay, or prevent their sale, in accordance with the proposed Final Judgment. Defendants shall ensure that any competitively sensitive information specifically associated with the Import Products and Miller International Products will not be disclosed to or shared in any way with any operations of Defendants other than with any employees currently involved in the operation of the Import Products and the Miller International Products who have a reasonable need to know such information for purposes of their employment or to comply with any legal, tax, or regulatory obligations.

B.      SABMiller shall until Completion of the Transaction and ABI shall until Closing use reasonable efforts to preserve existing relationships with each of the distributors, wholesalers, customers, and other business entities related to the Import Products and Miller International Products in the ordinary course of business and in accordance with past practice.

C.      SABMiller shall until Completion of the Transaction and ABI shall until Closing use all reasonable efforts to achieve the sales and revenues of the Import Products and Miller International Products in accordance with the previously agreed upon business plans and budgets for 2016.

D.      SABMiller shall until Completion of the Transaction and ABI shall until Closing provide sufficient working capital and lines of credit to continue to maintain the Import Products and Miller International Products as economically viable assets.

E.      SABMiller shall not until Completion of the Transaction and ABI shall not until Closing, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge, or otherwise

14

dispose of any of the Import Products and Miller International Products, other than the sale of Beer inventory.

      F.     SABMiller shall until Completion of the Transaction and ABI shall until Closing take no action that would jeopardize, delay, or impede the sale of the Import Products and Miller International Products.

      G.    Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the proposed Final Judgment to complete the divestitures of the Import Products and Miller International Products pursuant to the proposed Final Judgment to an Acquirer acceptable to the United States.

## VII.

## NO EFFECT ON TIMING OF THE ABI/SABMILLER TRANSACTION

Notwithstanding the foregoing or anything else to the contrary in this Hold Separate Stipulation and Order, including Sections V.H, VI.A, and VI.F of this Hold Separate Stipulation and Order, nothing in this Hold Separate Stipulation and Order shall prohibit SABMiller from taking actions that affect the timing of, or may otherwise jeopardize, delay, or impede, the Completion of the Transaction, but only to the extent that such actions are permitted under the terms and conditions of the Transaction, the Co-Operation Agreement between Anheuser-Busch Inbev SA/NV and SABMiller plc dated November 11, 2015, and applicable laws and regulations.

## VIII.

## REPORTING REQUIREMENTS

Within twenty (20) days after the completion of the Transaction, each Defendant will inform the United States of the steps it has taken to comply with its obligations under this Hold Separate Stipulation and Order.

Dated: July 20, 2016

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA

FOR DEFENDANT
ANHEUSER-BUSCH InBEV SA/NV

Michelle R. Seltzer (D.C. Bar No. 475482)
United States Department of Justice
Antitrust Division
450 5th Street, N.W., Suite 4100
Washington, DC 20530
Tel: (202) 353-3865
michelle.seltzer@usdoj.gov

Christine A. Varney (D.C. Bar No. 411564)
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1140
cvarney@cravath.com


FOR DEFENDANT SABMILLER plc


Janet L. McDavid (D.C. Bar No. 204073)
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
(202)-637-8780
Janet.mcdavid@hoganlovells.com

**ORDER**

IT IS SO ORDERED by the Court, this ___ day of ___, 2016.

Hon.
United States District Judge

Dated: July 20, 2016

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA

_____
Michelle R. Seltzer (D.C. Bar No. 475482)
United States Department of Justice
Antitrust Division
450 5th Street, N.W., Suite 4100
Washington, DC 20530
Tel: (202) 353-3865
michelle.seltzer@usdoj.gov

FOR DEFENDANT
ANHEUSER-BUSCH InBEV SA/NV

_____
Christine A. Varney (D.C. Bar No. 411564)
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1140
cvarney@cravath.com

FOR DEFENDANT SABMILLER plc

_____
Janet L. McDavid (D.C. Bar No. 204073)
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
(202)-637-8780
Janet.mcdavid@hoganlovells.com

ORDER

IT IS SO ORDERED by the Court, this 29th day of Jul, 2016.

_____
Hon.
United States District Judge

Dated: July 20, 2016

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA

FOR DEFENDANT
ANHEUSER-BUSCH InBEV SA/NV

_____
Michelle R. Seltzer (D.C. Bar No. 475482)
United States Department of Justice
Antitrust Division
450 5th Street, N.W., Suite 4100
Washington, DC 20530
Tel: (202) 353-3865
michelle.seltzer@usdoj.gov

_____
Christine A. Varney (D.C. Bar No. 411564)
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1140
cvarney@cravath.com

FOR DEFENDANT SABMILLER plc

_____
Janet L. McDavid (D.C. Bar No. 204073)
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
(202)-637-8780
Janet.mcdavid@hoganlovells.com

**ORDER**

IT IS SO ORDERED by the Court, this ____ day of _____, 2016.

Hon. _____
United States District Judge

16

Dated: July 20, 2016

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA

FOR DEFENDANT
ANHEUSER-BUSCH InBEV SA/NV

_____
Michelle R. Seltzer (D.C. Bar No. 475482)
United States Department of Justice
Antitrust Division
450 5th Street, N.W., Suite 4100
Washington, DC  20530
Tel: (202) 353-3865
michelle.seltzer@usdoj.gov

_____
Christine A. Varney (D.C. Bar No. 411564)
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1140
cvarney@cravath.com

FOR DEFENDANT SABMILLER plc

_____
Janet L. McDavid (D.C. Bar No. 204073)
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC  20004
(202)-637-8780
Janet.mcdavid@hoganlovells.com

**ORDER**

IT IS SO ORDERED by the Court, this ___ day of ___, 2016.

Hon.
United States District Judge
_____

16

**Attachment A**
**Import Brands**

1. Pilsner Urquell
2. Peroni
3. Grolsch
4. Tyskie
5. Lech
6. Cerveza Aguila
7. Cristal
8. Cusquena
9. Sheaf Stout
10. Castle Lager
11. Victoria Bitter
12. Crown Lager
13. Pure Blonde
14. Carlton Draught and Carlton Dry
15. Matilda Bay Brewing Company products described in the Exploitation of Rights Agreement between MBBC Pty Ltd (ACN 009 077 703) and MillerCoors LLC dated as of March 31, 2013
16. Cascade Brewery Company products described in the Exploitation of Rights Agreement between Cascade Brewery Company Pty Ltd (ACN 058 152 195) and MillerCoors LLC dated as of March 31, 2013
17. Caguama
18. Cantina
19. Pilsener
20. Regia
21. Suprema
22. Taurino
23. Barena
24. Port Royal
25. Salva Vida
26. Santiago
27. Haywards 5000
28. Arriba
29. Caballo
30. Cabana
31. Del Mar
32. San Lucas
33. Tocayo
34. Rialto
35. to the extent not otherwise listed herein, La Constancia S.A. de C.V. products described in the Supplier-Importer Agreement, dated as of July 11, 2005 between La Constancia S. S.A. de C.V. and Winery Exchange, Inc.

**Attachment B**
**Miller Branded Products**

**1. Hamm's**
A. Hamm's
B. Hamm's Golden Draft
C. Hamm's Special Light

**2. Icehouse**
A. Icehouse 5.0
B. Icehouse 5.5
C. Icehouse Light

**3. Magnum Malt Liquor**

**4. Mickey's**
A. Mickey's
B. Mickey's Ice

**5. Miller**
A. Miller Chill
B. Miller Dark
C. Miller Genuine Draft
D. Miller Genuine Draft Light
E. Miller Genuine Draft 64
F. Miller High Life
G. Miller High Life Light
H. Miller Lite
I. Miller Mac's Light
J. Miller Pilsner
K. Miller Special

**6. Milwaukee's**
A. Milwaukee's Best
B. Milwaukee's Best Dry
C. Milwaukee's Best Ice
D. Milwaukee's Best Light

**7. Olde English**
A. Olde English 800
B. Olde English 800 7.5
C. Olde English High Gravity 800

**8. Red Dog**

**9. Sharp's (Non-Alcohol)**

**10. Southpaw Light**

**11. Steel**
A. Steel Reserve Triple Export 8.1%
B. Steel Reserve High Gravity
C. Steel Reserve High Gravity 6.0
D. Steel Six

**12. Frederick Miller Classic Chocolate Lager**

**13. Henry Weinhard's**
A. Henry Weinhard's Blonde Lager
B. Henry Weinhard's Blue Boar
C. Henry Weinhard's Classic Dark Lager
D. Henry Weinhard's Hefeweizen
E. Henry Weinhard's Private Reserve
F. Henry Weinhard's Belgian Style Wheat
G. Henry Weinhard's Root Beer
H. Henry Weinhard's Black Cherry
I. Henry Weinhard's Vanilla Cream
J. Henry Weinhard's Orange Cream

**14. Leinenkugel's**
A. Leinenkugel's Apple Spice
B. Leinenkugel's Berry Weiss
C. Leinenkugel's BIG BUTT
D. Leinenkugel's Creamy Dark
E. Leinenkugel's Honey Weiss
F. Leinenkugel's Light
G. Leinenkugel's Oktoberfest
H. Leinenkugel's Original Lager
I. Leinenkugel's Red Lager
J. Leinenkugel's Sunset Wheat

**15. Sparks**
A. Sparks
B. Sparks Light
C. Sparks Plus 6%
D. Sparks Plus 7%